**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| CANADA STEAMSHIP LINES, INC. | ) | |
| | ) | |
| Plaintiff/ | ) | |
| Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Cause No.: 2:07-CV-25-TS |
| | ) | |
| WARNER PETROLEUM CORPORATION,) | | |
| | ) | |
| Defendant/ | ) | |
| Counter-Plaintiff | ) | |

**OPINION AND ORDER**

On January 26, 2007, the Plaintiff, Canada Steamship Lines (CSL), a Canadian corporation, filed its Complaint [DE 1] against the Defendant, Warner Petroleum Corporation (Warner) claiming causes of action of breach of contract and negligence resulting from a July 27, 2006, oil spill in Indiana Harbor. On April 23, 2007, the Defendant filed its Motion for Summary Judgment [DE 42]. The Plaintiff filed its Response [DE 44] on May 22, and the Defendant filed its Reply [DE 45] on July 9. The Motion is now ripe for ruling, and will be granted as to the breach of contract claim, and denied as to the negligence claim.

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

party.'" *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 608–09 (7th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). Under Rule 56(e)(2), a party opposing a properly made and supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." If appropriate, summary judgment should be entered against a party who fails to so respond. Fed. R. Civ. P. 56(e)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that a court should enter summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). A court's role on summary judgment is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 255; *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Thus, a court in ruling on a summary judgment motion construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *AA Sales & Assocs.*, 550 F.3d at 609. However, the court is not required to draw every conceivable inference from the record—only reasonable ones. *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989).

## FACTS

Viewing the facts in the light most favorable to the Plaintiff, the Court finds the following facts.

On July 25, 2006, CSL made arrangements with Warner for it to deliver certain quantities of differing fuels to the *Atlantic Huron* (the vessel) in Indiana Harbor, located on the southwest shore of Lake Michigan, in East Chicago, Indiana. The two parties formed a contract for 360 metric tons[1] of IFO 380 (heavy fuel), and for 30 metric tons of MDO (diesel oil), for delivery on July 27, 2006. After advisement from the vessel regarding its fuel-holding capacity, CSL contacted Warner to reduce the quantity ordered to 200 metric tons of heavy fuel, while maintaining its order for 30 metric tons of diesel oil.[2]

On the morning of July 27, 2006, the Chief Engineer of the vessel telephoned the Warner dispatch office to verify and confirm the quantities of fuel ordered, and discussed the logistics of the fuel transfer. At approximately 3:00 PM on July 27, the Warner bunker barge arrived to deliver the fuel to the vessel. The bunker barge Captain provided the Chief Engineer of the vessel with a walkie-talkie radio, and the two again confirmed the quantities of fuel to be transferred. The bunker barge then delivered 30 metric tons of diesel oil without incident.

At approximately 3:30 PM, the bunker barge began loading the heavy fuel into the vessel. One hour later, the Chief Engineer radioed the bunker barge to ask how much heavy fuel had been loaded, and was informed that 120 metric tons had been loaded. At approximately 5:00 PM, as the bunker barge continued to load the heavy fuel, the vessel's tank overflowed and fifteen metric tons of heavy fuel spilled onto the deck of the vessel and into the waters of Indiana Harbor. The loading of the heavy fuel halted, and all parties involved began emergency response

---

[1] Though the parties alternate between the spellings of the American "tons," and the Canadian "tonnes," the Court uses the American spelling.

[2] The Court notes the vigorous dispute between the parties as to the validity of this contract modification, and as to whether it took place at all. As mandated by the summary judgment standard, this Facts section recites the facts in a light most favorable to the non-moving party.

procedures to clean up the spill. In total, Warner pumped a total of 335 metric tons of heavy fuel, 15 metric tons of which was spilled and rendered unusable.

After the fuel spill, Warner sent CSL an invoice charging CSL for the entire 335 metric tons of heavy fuel that had been offloaded. Upon receipt of Warner's invoice, CSL approved payment of the notice, and paid Warner for the whole amount. CSL now claims damages resulting from its paying an emergency response firm to clean the spill, as well as the cost of the spilled and unusable heavy fuel, for which it has already paid.

## DISCUSSION

In its Motion for Summary Judgment, the Defendant first argues that it is entitled to summary judgment on the Plaintiff's breach of contract claim because, as a matter of law, there was no actual legitimate modification by CSL of its order with Warner for the delivery of the heavy fuel. Alternatively, the Defendant argues that CSL's approval of and full payment for the Warner invoice for the entire 335 metric tons of heavy fuel requires the Court to define the quantity term as 335 metric tons. The Defendant next argues that it is entitled to summary judgment on the Plaintiff's negligence claim, because the Plaintiff's negligence supercedes its own. This Discussion section will address each claim, respectively.

**A.  Breach of Contract**

In rebutting the Plaintiff's breach of contract claim, the Defendant argues that controlling sections of the Uniform Commercial Code (UCC) demand summary judgment on this claim. The Court agrees. In discussing this issue, the Court notes the anomalous nature of the Plaintiff's

breach of contract claim. Essentially, the Plaintiff argues that it modified the original contract for 360 metric tons of heavy fuel to a contract for 200 metric tons of heavy fuel. Then, when the Defendant loaded 335 metric tons onto the Plaintiff's ship, 15 metric tons of which spilled into the water, the Plaintiff paid for all 335 metric tons. Now, the Plaintiff argues that the breach of the modified contract (Warner's pumping of more than 200 metric tons of heavy fuel) led to the damages incurred. Because the Court finds that the Plaintiff effectively accepted a modified contract at 335 metric tons with full knowledge of the oil spill, the Court will grant summary judgment on this claim.

Though contracts involving sea vessels may be maritime in nature, and therefore governed by federal maritime law, the Uniform Commecial Code is the controlling law for federal admiralty law. *See Southworth Machinery Co. v. F/V Corey Pride*, 994 F.2d 37, 41 (1st Cir. 1993); *Sun Oil Co. Of Penn. v. M/T Carlisle*, 771 F.2d 805, 811–12 (3d Cir. 1985). In maritime transactions, the UCC is understood to be indicative of the federal common law of admiralty. *Interpool Ltd. V. Char Yigh Marine*, 890 F.2d 1452, 1459 (9th Cir. 1989). That the UCC controls this case is undisputed by the parties.

Section 2-601 of the UCC states that "if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may: (a) reject the whole; (b) accept the whole; or (c) accept any commercial unit or units and reject the rest." Section 2-602 states that "Rejection of goods must be within a reasonable time after their delivery of tender. It is ineffective unless the buyer seasonably notifies the seller." Section 2-606 defines acceptance as when the buyer "after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that the buyer will take or retain them in spite of their nonconformity." Finally, Section 2-

5

605(2) states that "[a] buyer's payment against documents tendered to the buyer made without reservation of rights precludes recovery of the payment for defects apparent in the documents."

In analyzing this issue, the Court is unaided by the Plaintiff's Response. Responding to the Defendant's thoroughly briefed argument that CSL had accepted delivery under the UCC, CSL opined: "Other than being merely a transparent bit of sophistry, this non-sequitur proves nothing." (Response, 12 DE 44). As the Plaintiff itself concedes that the UCC controls, and that it paid for and used the delivered fuel (including the usable fuel that exceeded the 200 metric ton amount), the Defendant's argument merits full consideration. The Plaintiff then rhetorically asks, "[s]hould CSL not have paid for the fuel it used and trust the Court to do it justice for the expense of cleaning up Warner's [s]pill?"*Id.* The Court now endeavors to answer the Plaintiff's question.

As the UCC controls, CSL had the option of accepting, rejecting, or accepting in part and rejecting in part the 335 metric tons of heavy fuel that Warner delivered. All facts point to the conclusion that CLS accepted *all* of the heavy fuel, including the spilled portion. At the time that CSL paid for the heavy fuel, it certainly was aware of the oil spill, and that the delivery had otherwise not been made in conformity with its expectations of a 200 metric ton delivery. Nevertheless, it is undisputed that CSL paid for the goods without reservation of rights, which constitutes acceptance under Section 2-605(2). Though the spilled fuel could surely be considered as defective goods, those defects (in essence, the spilled oil) were "apparent in the documents" when signed. As "acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a nonconformity may not be revoked because of it." UCC § 2-607, CSL accepted the contract as performed, and there can be no breach of contract as

a matter of law.[3]

Alternatively, the Court notes that even were it not to find a modified contract for 335 metric tons of fuel, the Plaintiff's claim would still fail as a matter of law. Assuming *arguendo* that the contract had been modified to one that included the term of 200 metric tons of heavy fuel, Warner met its obligation. It is undisputed that on July 27, Warner delivered to CSL 200 metric tons of heavy fuel—it is merely the surplusage that is in issue.

Though it is regrettable that the Plaintiff paid for 15 metric tons of heavy fuel that were unusable, its remedy is not in contract law. The Plaintiff ratified the contract for 335 metric tons of heavy fuel with full knowledge of the unusable portion by accepting and paying for it; and alternatively, the Defendant performed under the original contract, as alleged to have been modified by the Plaintiff.

**B.     Negligence**

Though summary judgment will be granted on the breach of contract claim, the alleged modification from the 360 metric ton contract to a 200 metric ton contract remains very much at issue in considering the Plaintiff's claim for negligence. The Defendant argues for summary judgment on the negligence claim for two reasons: first, because in delivering only the amount of heavy fuel that the Plaintiff ordered, it could not have been negligent, and second, that the Plaintiff's own superceding negligence precludes the Plaintiff's claim as a matter of law. This Section will address each argument, respectively.

---

[3] As the Court determines that a new contract was formed at 335 metric tons, it does not decide the factual question (which may be relevant to the preserved issue of negligence) of whether the initial contract for 360 metric tons of heavy fuel was modified to a contract for 200 metric tons before it arrived at its final form of 335 metric tons.

1. **The Contract**

The Defendant first argues that since CSL never modified the contract from its original term of 360 metric tons, that it cannot be negligent, as it was only delivering the agreed-upon amount of heavy fuel. This argument fails for two reasons.

First, there is a genuine issue of triable fact regarding whether the contract was modified. In its motion for summary judgment, the Defendant does present compelling evidence that the contract was not modified, including the behavior of the vessel's crew and its seeming belief that it was to receive more than 200 metric tons of fuel. However, the Plaintiff has also submitted affidavits, which support a finding that the contract had been modified to the lesser amount. As such, this matter is one that should be properly before a trier of fact, and the Court cannot rule on it as a matter of law. To the extent that the Defendant's Motion relies on the non-existence of the modification, it cannot be granted.

Alternatively, the Defendant's argument fails even if its premise is accepted. Assuming *arguendo* that the contract had not been modified from its original 360 metric ton amount, the Defendant provides no support that this fact would make it *per se* non-liable. In contrast, the Plaintiff provides evidence that Warner violated internal and federal procedures for transferring fuels, and may have been negligent, even if it believed that the amount it was depositing was the agreed-upon amount. Since both the agreed-upon amount of fuel meant to be delivered, and the caution that the Defendant took in delivering it are genuine issues of triable fact, summary judgment cannot be granted on this theory.

2. **Superceding Negligence**

The Defendant next argues that regardless of whether it was negligent, the Plaintiff's negligence claim is precluded by the Plaintiff's own superceding negligence. The Court disagrees.

The Supreme Court, in *Exxon v. Sofec, Inc.*, established that the proximate causation requirement is applicable in admiralty cases. 517 U.S. 830, 836–37 (1996). In other words, if the negligent acts of one party supercede the negligent acts of a second party, that second party cannot be held liable in tort on a theory of negligence. The superceding cause doctrine operates to cut off the liability of a negligent defendant where there is an absence of proximate cause. *Id.* at 837–38. This principle holds true even in cases "where the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable." *Id.* at 837; *see also Trias Maritime Co. Ltd. Of Liberis v. Great Lakes Co.,* 2001 WL 1359856 (N.D. Ill. Nov. 2, 2001) (entering summary judgment on a theory of proximate causation in a maritime collision).

In this case, the Defendant contends that the negligent acts of CSL throughout the fuel delivery, including CSL's violations of its own bunkering procedures, superceded any possible negligence committed by Warner in delivering the fuel. However, the Plaintiff alleges, with supporting affidavits, that the Defense had reason to know that it only expected 200 metric tons of heavy fuel to be delivered, and that its crew crafted its procedures accordingly. Were the evidence proffered by the Plaintiff deemed credible, the Court could not find its behavior negligent at all, let alone negligent enough to constitute a superceding cause as a matter of law. As such, there exists a genuine issue of triable fact, and the Court cannot find that the Defendant is entitled to summary judgment as to the negligence claims.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the Defendant's Motion for Summary Judgment [DE 42]. Summary judgment is entered on the Plaintiff's breach of contract claim against the Defendant, but is denied on the negligence claim by the Plaintiff against the Defendant.

SO ORDERED on October 13, 2009.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT